IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

MARLENE MIGNON SERATT                                                         PLAINTIFF

V.                                           NO. 09-5194

MICHAEL J. ASTRUE,
Commissioner of the Social Security Administration                            DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Marlene Mignon Seratt, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for a period of disability and disability insurance benefits (DIB) under the provisions of Title II of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. § 405(g).

**I.    Procedural Background:**

Plaintiff filed her application for DIB on October 27, 2006, alleging an inability to work since January 24, 2006, due to carbon monoxide poisoning, back injury, fibromyalgia, depression, no sense of smell, headaches, memory problems, anxiety, anger problems, arthritis in the neck, back and hands, and muscle pain. (Tr. 134). An administrative hearing was held on December 9, 2008, at which Plaintiff appeared with counsel and testified. (Tr. 8-43).

By written decision dated February 26, 2009, the ALJ found that during the relevant time

period, Plaintiff had an impairment or combination of impairments that were severe - fibromyalgia, allergies, carbon monoxide exposure, thyroid disorder, osteoarthritis, and depression. (Tr. 72). However, after reviewing all of the evidence presented, she determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix 1, Subpart P, Regulation No. 4. (Tr. 73). The ALJ found Plaintiff retained the residual functional capacity (RFC) to:

> perform light work except that she cannot engage in sustained driving as part of her work secondary to fatigue; the claimant cannot climb scaffolds, ladders, and ropes; the claimant can only occasionally climb ramps and stairs, stoop, bend, crouch, crawl, kneel and balance secondary to pain and fatigue; the claimant cannot work near unprotected heights and dangerous equipment and machinery; the claimant can only work in routine and repetitive jobs that have non-complex, simple instructions, have few variables, require little judgment, and can be learned by rote; the claimant must have concrete, direct, and specific supervision;  and the claimant can only have superficial contact incidental to work with the public and coworkers.

(Tr. 74). With the help of a vocational expert, the ALJ determined Plaintiff could perform other work as a bench assembler and housekeeping cleaner. (Tr. 79).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on July 7, 2009. (Tr. 1-3). Subsequently, Plaintiff filed this action. (Doc. 1). This case is before the undersigned pursuant to the consent of the parties. (Doc. 6). Both parties have filed appeal briefs, and the case is now ready for decision.[1] (Docs. 9, 10).

**II.     Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F. 3d 576, 583 (8th Cir.

---

[1] On October 18, 2010, the Court administratively terminated this case pending submission by the Commissioner of a certified copy of a missing exhibit. (Doc. 11). After the Defendant filed a reply to the Court order on November 8, 2010 (Doc. 12), the Court re-opened the case on November 10, 2010. (Doc. 13). The Court gave the parties an opportunity to file supplemental briefs, but no such briefs were filed.

2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F. 3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§423(d)(3), 1382(3)(D). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing her claim; (2) whether the claimant had a severe physical and/or

AO72A
(Rev. 8/82)

mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the national economy given her age, education, and experience. See 20 C.F.R. §416.920. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of her residual functional capacity (RFC). See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §416.920.

### III.  Discussion:

Of particular concern to the undersigned is the ALJ's RFC determination. RFC is the most a person can do despite that person's limitations. 20 C.F.R. §404.1545(a)(1). It is assessed using all relevant evidence in the record. Id. This includes medical records, observations of treating physicians and others, and the claimant's own description of her limitations. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). "The ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id.

In the present case, the ALJ determined that Plaintiff could perform light work with certain limitations. "Light work" is defined as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. § 404.1567(b).

A review of the record reveals that as early as January of 2005, Plaintiff continued to complain to her treating physician, Dr. Corwin Petty, of right and left knee pain and right hip pain, and reported that the pain was worse when she bent down with her knees, and her right hip pain flared from time to time and was unpredictable. (Tr. 287).

On January 26, 2005, Dr. Robert J. Tomlinson, Jr., of the Orthopedic Institute, wrote Dr. Petty, stating that Plaintiff had recently been diagnosed "by Dr. Dykman with fibromyalgia" and that the medication change by Dr. Petty significantly improved her condition. (Tr. 217). Dr. Tomlinson noted that Plaintiff had a Trendelenburg gait and bilateral antalgic gait.[2] (Tr.218). He further found as follows:

> She is tender along the medial peripatellar retinaculum bilaterally. She has neutral patellar tilt. She has 1+ positive patellofemoral crepitus and grind bilaterally. She has no laxity to either knee. She has some mild medial joint line tenderness. Evaluation of the hips shows tenderness over the left and right PSIS. At 90 degree flexion, she has 20 degrees internal, 70 degrees external rotation. She is tender over the anterior talofibular ligament of the left ankle. She has mild effusion.

(Tr. 218). Dr. Tomlinson recommended a reconditioning program, and his impression was:

1. Deconditioning
2. Patello femoral pin syndrome
3. Hip flexor strain

---

[2]Trendelenburg gait - The gait characteristic of paralysis of the gluteus medius muscle, marked by a listing of the trunk toward the affected side at each step. Dorland's Illustrated Medical Dictionary 764 (31st ed. 2007). Antalgic gait - A limp adopted so as to avoid pain on weight-bearing structures (as in hip injuries), characterized by a very short stance phase. Id.

    4. Left ankle synovitis[3]

(Tr. 218).

On July 1, 2005, Dr. David L. Brown, of Neurological Associates, wrote a letter to Dr. Petty, wherein he found that many of Plaintiff's symptoms predated her "acute intoxication of carbon monoxide." [4] (Tr. 200). Dr. Brown's impression was:

> Plaintiff has a large constitution of symptoms to include headache, photophobia, sore throat, weakness, muscle aches and pains. Many of these symptoms predate her acute intoxication of carbon monoxide. It is very obvious the patient is quite concerned about all of these symptoms and is fearful of long-term residual. If indeed the patient has had some type of chronic injury, I know of no anecdote for these problems. I did decide since it was so obvious this is going to be a long-term worker's comp issue to go ahead and do a MRI to see if there is any evidence of basal ganglia injury in that she does state she is incoordinated [sic] and always dropping things. I found no objective findings of basal ganglia abnormalities. ...
>     As far as I can tell, many of the symptoms would not be related to carbon monoxide poisoning, I am unaware of any kind of chronic symptoms of muscle aches and pains that would be related to carbon monoxide poisoning. She is very significantly angry and upset about the situation. Possibly part of this personality is related to her intoxication or possibly is her baseline personality with her chronic illness.

(Tr. 200).

An Initial Medical Report by Eric W. Walker, of Millenium Chiropractic & Rehab, dated August 10, 2005, indicated cervical radiographs were obtained, and revealed mild to moderate degenerative disc disease at C5/C6 and C6/C7. (Tr. 223). He stated that she also had a moderate reversal of her cervical lordotic curve. (Tr. 223).

On October 12, 2005, Dr. Petty noted that Plaintiff had noticed increased problems in her

---

[3] Synovitis - Inflammation of a synovium; it is usually painful, particularly on motion, and is characterized by a fluctuating swelling due to effusion within a synovial sac. Some types are named for accompanying tissue changes, such as *fibrinous, hyperplastic, or lipomatous synovitis;* others are named for accompanying disease provesses or complications, such as *gonorrheal, metritic, puerperal, rheumatic, scarlatinal, syphilitic, or tuberculous synovitis.* Id. at 1879.

[4] Plaintiff was exposed to a carbon monoxide leak at her employment, and Dr. Brown was evaluating Plaintiff to determine the effect such exposure might have had on Plaintiff.

AO72A
(Rev. 8/82)

legs that turned black and then white. He assessed her with myalgias; seborrheic keratosis[5] bilateral eyes; verucca bilateral legs; and anxiety syndrome. (Tr. 269). On October 24, 2005, Plaintiff reported to Dr. Petty that she was taking Neurontin for pain, but felt like it was not helping as much. (Tr. 267). Dr. Petty noted that he and Plaintiff discussed her being on multiple pain medications, and she did not feel that this was her problem, and that she needed them in order to function. (Tr. 267). On November 30, 2005, Plaintiff reported to Dr. Petty that her chiropractor made her back feel better. (Tr. 262). On January 18, 2006, Dr. Petty indicated Plaintiff could return to work on January 23, 2006. (Tr. 300).

In a May 23-24, 2007 Pain and Other Symptoms Report, Plaintiff reported that her pain interfered with her life and was "all over in my muscles, my head and joints all over my body.' (Tr. 156). She reported that she sometimes needed help putting on her shirts and taking them off, that it was painful to raise her arms, and that she could not lift heavy pots as her wrists would "give out on me." (Tr. 158). At that time, she was taking Orphenadrine, Hydrocodone, Estratest, Levothyroxine, Sulindac, and Clonazapm. (Tr. 164). In an undated Disability Report - Appeal, Plaintiff reported that the pain in her elbows, shoulders, knees, and feet was worse. (Tr. 147).

At the 2008 hearing, Plaintiff testified that the pain in her body slowed her down when she was doing pharmacy tech work in 2006, and that she dropped things all the time. (Tr. 26). She reported that she had pain shooting down in her hands, her elbows, and that every joint hurt. (Tr. 26). She reported that she had not been able to continue to see a rheumatologist, who diagnosed her with fibromyalgia, and that she was taking pills to treat it. (Tr. 28). She further

---

[5]Seborrheic keratosis - A common, usually benign type of skin lesion composed of basaloid cells; it usually first appears after age 30 and presents as a soft, friable plaque with variable pigmentation. The most common sites are the face, trunk, and limbs. Sudden appearance and rapid growth of the lesions is called the *Leser-trelat sign* and may indicate internal malignancy. Called also *seborrheic wart* and *verruca seborrheica*. Id. at 996.

testified that she could not bend over to clean the bathtub, that pushing the accelerator in the car was painful, and that sitting in a chair was uncomfortable. (Tr. 30). She testified that her hands had gotten worse, and that sometimes if she tried to write, she would get stabbing pains in them. (Tr. 35). She said that the pain was worse in her right hand. (Tr. 35-36).

There is no Physical RFC Assessment in the record, and the Court fails to understand how the ALJ could determine that Plaintiff would have the ability to do light work. Furthermore, the bench assembler position requires frequent reaching, handling and fingering, and the housekeeping cleaner requires frequent reaching and handling and occasional fingering. As stated earlier, residual functional capacity is a medical question, and the ALJ's determination concerning a claimant's RFC must be supported by medical evidence that "addresses the claimant's ability to function in the workplace." Lewis, 353 F.3d at 646. Without medical evidence indicating how much Plaintiff would be able to lift and carry, or how often Plaintiff could handle, finger, and reach, particularly in light of her diagnosed fibromyalgia, the Court can not say that there is substantial evidence to support the ALJ's RFC finding. Accordingly, the Court finds remand necessary so that the ALJ can more fully and fairly develop the record regarding Plaintiff's physical RFC.

On remand, the ALJ is directed to obtain a Physical RFC Assessment from either Plaintiff's treating physician or an examining physician, so that an informed decision can be made regarding Plaintiff's ability to perform basic work activities on a sustained basis. With this evidence, the ALJ should then re-evaluate Plaintiff's RFC, and specifically list in a hypothetical to a VE any limitations that are indicated in the RFC assessment and supported by the evidence.

**IV.     Conclusion:**

Accordingly, the Court concludes that the ALJ's decision is not supported by substantial evidence, and therefore, the denial of benefits to the Plaintifff should be reversed and this matter should be remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

DATED this 30th day of August, 2011.

/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

**AO72A**
**(Rev. 8/82)**